[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEB 13, 2007
THOMAS K. KAHN
CLERK

_____

No. 05-17227

_____

D. C. Docket No. 05-21059-CV-PAS
BKCY No. 01-15934-BKC-RA

IN RE: PRUDENTIAL OF FLORIDA LEASING, INC.,

Debtor,

_____

PATRICIA A. DZIKOWSKI, Trustee,

Plaintiff-Appellant,

versus

NORTHERN TRUST BANK OF FLORIDA, N.A.,
a national banking association,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(February 13, 2007)**

Before PRYOR and FAY, Circuit Judges, and STEELE,[*] District Judge.

PRYOR, Circuit Judge:

The question in this appeal is how the rule of single satisfaction for claims brought by a bankruptcy estate should be applied to 11 fraudulent transfers that were at least partially satisfied in a settlement of a lump sum of $3.9 million involving 377 transfers and several other parties. See 11 U.S.C. § 550(d). Patricia Dzikowski, as Chapter 7 Trustee for the estate of Prudential of Florida Leasing, appeals the summary judgment in favor of Northern Trust Bank of Florida and against her complaint to avoid the 11 fraudulent transfers and recover approximately $900,000 for the debtor's estate. The bankruptcy court applied Florida law and credited the entire amount of the settlement to the Trustee's claims against Northern Trust, and the district court affirmed. Because we conclude that the federal rule of single satisfaction requires the bankruptcy court to allocate the amount of the settlement that applies to the complaint against Northern Trust rather than apply Florida law, we reverse and remand.

## I. BACKGROUND

Robert New incorporated the debtor in 1993. The debtor was purportedly in the business of leasing office equipment but was allegedly used to perpetrate a

---

[*] Honorable William H. Steele, United States District Judge for the Southern District of Alabama, sitting by designation.

Ponzi scheme. New solicited about $15 million from numerous investors and used the money to pay personal expenses on behalf of himself and his spouse, Monica New. Between September 2000 and March 2001, in 11 different transactions, the News instructed Northern Trust to move a total of $900,000 from the debtor's account to cover overdrafts and expenses on their personal account. New died in March 2001.

On February 27, 2002, Dzikowski, as the Trustee of the debtor's estate, sued Monica New, the estate of Robert New, and several other defendants to recover approximately $10 million by avoiding approximately 377 transfers. Northern Trust was not a defendant in this first action but 11 of the 377 transfers concerned the funds transferred from the debtor to Northern Trust on the News' behalf. The parties settled this first lawsuit for $3.9 million. The Trustee agreed to waive all claims against the defendants, and the defendants admitted no liability. The bankruptcy court did not apprise Northern Trust of the settlement.

The settlement expressly contemplated as follows that the Trustee could pursue claims for fraudulent transfer against other parties:

> It is expressly understood between the Parties nothing in [the Settlement Agreement] is intended to in any way prejudice or limit the Trustee's ability to pursue any claims available to her against [other parties], and that the release and waiver provided in this paragraph shall not be construed to release or waive any such claims.
>
> *         *         *

3

> Except as provided in this Settlement Agreement, the Trustee reserves all rights to pursue claims against any parties other than the [parties to the settlement], including claims for fraudulent transfer, preferential transfer, or any other claims available to the Trustee under bankruptcy law and state law.

On August 22, 2002, the bankruptcy court approved the settlement.

On May 5, 2003, the Trustee filed an adversary action against Northern Trust to recover under section 550 of the Bankruptcy Code approximately $900,000 from the 11 transfers. The parties both moved for summary judgment. Northern Trust argued that it was not the "initial" transferee of the 11 transfers but instead an "intermediate" transferee. Northern Trust also argued that any award of damages based on these 11 transactions would be double recovery for the Trustee, first from the News under the settlement agreement and then from Northern Trust. The Trustee argued that Northern Trust was the initial transferee of the 11 transfers and that the bankruptcy court should find that the claims against Northern Trust had been only partially satisfied by the Trustee's settlement with the News.

The bankruptcy court granted partial summary judgment in favor of each party. The bankruptcy court concluded that the Trustee was estopped from arguing that Northern Trust was the initial transferee because in the first lawsuit the Trustee had argued that the News were the initial transferees. The bankruptcy court also concluded that the Trustee had avoided the transfers as fraudulent in the first

lawsuit and had received some value on account of them.  The Trustee appealed the decision about judicial estoppel to the district court, but neither party challenged the ruling that the 11 transfers had been avoided by the New litigation.

The bankruptcy court reserved judgment on whether the Trustee's potential damages against Northern Trust should be offset by the total settlement amount or whether the Trustee's damages against Northern Trust should be offset by only part of the total settlement amount.  The bankruptcy court asked each party to suggest methods of allocating the previous settlement among the 377 claims to prevent double recovery for the 11 duplicate claims.  The Trustee suggested that the court either weigh the strengths of each settled claim balanced with the likelihood of recovery or allocate the settlement sum pro rata across the claims.

The bankruptcy court held that Florida law prohibited a hearing to determine the amount of setoff due Northern Trust.  Because the parties to the settlement had not specified an exact amount of settlement for each claim, the bankruptcy court found that the Trustee had already recovered the full amount of the fraudulent conveyances by way of the $3.9 million settlement.  The bankruptcy court granted final summary judgment for Northern Trust.  The Trustee appealed to the district court.

The appeal of the final summary judgment was consolidated with the

previous appeal of the earlier partial summary judgment. The district court affirmed the final summary judgment and dismissed the Trustee's appeal from the partial summary judgment as moot.

## II. STANDARD OF REVIEW

We review <u>de novo</u> a grant of summary judgment. <u>In re Optical Techs., Inc.</u>, 246 F.3d 1332, 1334 (11th Cir. 2001).

## III. DISCUSSION

The Trustee raises interrelated challenges to the judgment of the district court and the judgment of the bankruptcy court that the district court affirmed. First, the Trustee argues that the bankruptcy court erred in applying the entire sum of the settlement against her claims against Northern Trust. Second, the Trustee argues that, even if the final summary judgment was correct, the district court incorrectly dismissed as moot her appeal from the partial summary judgment. The Trustee argues that, if we reverse the final summary judgment, we should also reach and reverse the partial summary judgment even though the district court did not reach this issue. We address each of these issues and the opposing arguments of Northern Trust in order.

### A. The District Court Erred in Granting Final Summary Judgment to Northern Trust.

Section 550(d) provides that "[t]he trustee is entitled to only a single

6

satisfaction under subsection (a) of this section." 11 U.S.C. § 550(d). Section 550(a) of the Bankruptcy Code vests the Trustee with a right of action to recover, to the extent that a transfer is avoided under another provision of the Code, "the property transferred, or . . . the value of such property from (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or (2) any immediate or mediate transferee of such initial transferee." 11 U.S.C. § 550(a). In other words, the Trustee cannot obtain twice the full value of a fraudulent transfer by recovering that value from both the initial transferee and a subsequent transferee. The Trustee is limited to a single recovery for each transfer.

Although "setoff rights" are preserved by section 553 of the Bankruptcy Code, the rights described in that section are different from the rule of single satisfaction in section 550(d). Section 553 provides that "this title does not affect any right of a creditor to offset a mutual debt . . . that arose before the commencement of the case." 11 U.S.C. § 553. "Setoff [under section 553] is an established creditor's right to cancel out mutual debts against one another in full or in part . . . to avoid 'the absurdity of making A pay B when B owes A.'" In re Patterson, 967 F.2d 505, 508-09 (11th Cir. 1992). We have held that "substantive law, usually state law, determines the validity of the right [of setoff]" under the Bankruptcy Code. Id. at 509; see also 5 Collier on Bankruptcy ¶ 553.04 (2004)

7

("[T]he Bankruptcy Code does not create any setoff right; it merely preserves certain rights of setoff that exist under applicable non-bankruptcy law."). In contrast with the preservation of a right of setoff under section 553, the rule of single satisfaction under section 550(d) does not preserve any right created under state law. That these two concepts are both colloquially referred to as a right of "setoff" has no legal significance.

Florida law, which was borrowed by the bankruptcy court, provides a traditional rule of single satisfaction with an unusual variation. Like the law of most states, Florida law prevents a party from recovering twice for the same damages. See, e.g., Fla. Stat. § 46.015(2). Unlike the courts of other states, Florida courts have held that the full sum of an undifferentiated settlement of multiple tort claims should be applied against a judgment involving one of those claims against a nonparty to the settlement. Compare Nauman v. Eason, 572 So. 2d 982, 985 (Fla. Dist. Ct. App. 1990), with Walihan v. St. Louis-Clayton Orthopedic Group, Inc., 849 S.W.2d 177, 182 (Mo. Ct. App. 1993) (distinguishing Nauman and rejecting a full setoff unless both tortfeasors were potentially liable on both claims subject to the settlement agreement). Relying on Florida law, the bankruptcy court held that "complete setoff is required where a previous settlement does not allocate damages among different parties or claims."

Although federal law governs the interpretation of a federal statute, sometimes federal law provides a uniform common law rule and other times federal law adopts state law as the federal rule of decision. See United States v. Kimbell Foods, Inc., 440 U.S. 715, 727-28, 99 S. Ct. 1448, 1458 (1979). The bankruptcy court determined, and the district court agreed, that federal law borrows state law in the application of section 550(d). Northern Trust defends that decision.

The Trustee argues that the bankruptcy court erred by interpreting section 550(d) by reference to Florida law. The Trustee also argues that, even if Florida law does provide the rule of decision, the decisions upon which the bankruptcy court relied are wholly inapplicable. Because we conclude that state law does not provide the federal rule of decision in this appeal, we need not address the alternative argument.

### 1. Federal Law Governs the Rule of Single Satisfaction.

The question we must consider is whether state law should be used to apply section 550(d) rather than a federal rule of common law. "[F]ederal courts should 'incorporat[e] [state law] as the federal rule of decision,' unless 'application of [the particular] state law [in question] would frustrate specific objectives of the federal programs.'" Kamen v. Kemper Fin. Servs., Inc., 500 U.S. 90, 98, 111 S. Ct. 1711,

9

1717 (1991) (citations omitted) (alterations in original). The presumption in favor of state law "is particularly strong in areas in which private parties have entered legal relationships with the expectation that their rights and obligations would be governed by state-law standards." Id. The Bankruptcy Code is often interpreted by reference to state law because the Code is built on pre-bankruptcy commercial relationships and the property rights arising from those relationships. See, e.g., Butner v. United States, 440 U.S. 48, 55, 99 S. Ct. 914, 918 (1978) (property interests); In re Conner, 733 F.2d 1560, 1562 (11th Cir. 1984) (lien priorities). There are nevertheless instances where applying the Code requires a uniform rule of federal common law. See, e.g., In re Columbia Gas Sys. Inc., 997 F.2d 1039, 1055 (3d Cir. 1993) (bankruptcy property rights in oil and gas refunds defined by federal common law).

This appeal presents an issue in which the objectives of the federal law of bankruptcy are better served by the adoption of a rule of federal common law. The decision "to adopt state law or to fashion a nationwide federal rule is a matter of judicial policy dependent upon a variety of considerations always relevant to the nature of the specific governmental interests and to the effects upon them of applying state law." Kimbell Foods, 440 U.S. at 728, 99 S. Ct. at 1458 (citation and quotation marks omitted). We must consider the need for uniformity, whether

application of state law frustrates important federal policies, and the impact of federal common law on preexisting commercial relationships premised on state law. See Redwing Carriers, Inc. v. Saraland Apartments, 94 F.3d 1489, 1501 (11th Cir. 1996).

First, a uniform rule of federal law is preferable because the rule of single satisfaction concerns the judicial process necessary to approve settlements that terminate bankruptcy proceedings and the valuation of settled claims in collateral litigation. The element of Florida law implicated in this appeal is not a party's substantive right to a setoff; instead, the rule against holding "an allocation hearing by the trial court in order to apportion the proceeds of a private settlement agreement" concerns the procedure for crediting the amount of a settled claim. Ass'n for Retarded Citizens, Dade County, Inc. v. State Dep't of Health & Rehab. Servs., 619 So. 2d 452, 453 (Fla. Dist. Ct. App. 1993); see also Medez v. Simon, 739 So. 2d 101 (Fla. Dist. Ct. App. 1999) (waiving the rule and requiring a judicial apportionment when a minor is involved). State law ordinarily does not govern the procedures of federal courts. See Hanna v. Plumer, 380 U.S. 460, 465, 85 S. Ct. 1136, 1140 (1965).

Second, applying state law has the potential to frustrate the purposes of the Bankruptcy Code. The Florida rule errs on the side of preventing a single

11

satisfaction, but the underlying purposes of the trustee's avoidance powers compel a different result. We have recognized that the power to avoid is an important "exception to the general rule that the trustee takes the debtor's estate as it is at the commencement of the bankruptcy." Official Comm. of Unsecured Creditors of PSA, Inc. v. Edwards, 437 F.3d 1145, 1152 (11th Cir.), cert denied, 127 S. Ct. 45 (2006). The power of the trustee to avoid certain transfers prevents the depletion of the estate, promotes an equitable distribution of the debtor's assets, and protects creditors who advanced credit in ignorance of fraud. See, e.g., In re Bracewell, 454 F.3d 1234, 1255 (11th Cir.), petition for cert. filed, 75 U.S.L.W. 3296 (U.S. Nov. 27, 2006) (No. 06-739) (noting that the power to avoid "protect[s] creditors' interests and prevent[s] debtor abuse"); In re Int'l Admin. Servs., Inc., 408 F.3d 689, 706 (11th Cir. 2005) ("[T]he character of a fraudulent transfer action . . . is to expose fraudulent dealings."). The Florida presumption would undermine these federal policies of bankruptcy.

Third, applying a uniform rule of federal law will not disturb any pre-existing commercial expectations predicated on state law. Section 550(d) applies only to specific federal rights of action, and the rule of single satisfaction applies only to settlements that have been approved by a bankruptcy court in a core bankruptcy proceeding.

12

Both the textual and contextual differences between section 553 and section 550(d) underscore our conclusion that federal, not state, law should provide our rule of decision. The text of section 553 makes clear that it preserves rights to offset debt created by non-bankruptcy law that vested prior to the commencement of the bankruptcy case. Section 553 allows states unfettered discretion to create, eliminate, and otherwise define any rights to offset mutual debt and requires federal courts to recognize those rights. Section 550(d), on the other hand, creates a rule of single satisfaction without reference to state law. The rule of single satisfaction applies only to claims that arise under federal law, are brought in a federal proceeding, and vest after a bankruptcy case has commenced. In this circumstance, the states have no discretion to eliminate or create a bar against recovery by a trustee.

The bankruptcy court concluded that "setoff rights pertaining to the New settlement must be construed under Florida law" because state law governs the interpretation of contracts, but whether Florida law would govern the interpretation of the settlement agreement is beside the point. If the Trustee and New had chosen the law of a foreign country to govern their settlement agreement, section 550(d) would still bar the Trustee from taking more than a "single satisfaction" on account of the same avoided transfer. The right of Northern Trust to invoke the rule of

13

single satisfaction arises from the Bankruptcy Code, not the settlement agreement.

Citing In re Jiffy Lube Securities Litigation, 927 F.2d 155 (4th Cir. 1991), the bankruptcy court also erroneously concluded that "federal common law is particularly inapplicable to the state-law claims resolved by the New Settlement because Northern Trust's setoff rights may differ substantially under federal common law and Florida law." In Jiffy Lube, the Fourth Circuit vacated a proposed settlement of a securities class action because the district court entered a bar order that required the non-settling defendants to give up any right of contribution or indemnification against the settling defendant but did not specify how much setoff credit the non-settling defendants would be given against damages awarded against them or the method for determining that credit. Id. at 162. The Fourth Circuit acknowledged several difficulties in choosing a method for determining the credit amount, including that under a "setoff determination which is consistent with other federal jurisdictions but inconsistent with the provisions of the forum state's law, the setoffs would have to be figured differently with respect to [similar state and federal securities] claims." Id. at 161.

Jiffy Lube does not support the decision of the bankruptcy court to apply Florida setoff law for at least two reasons. First, the Fourth Circuit did not hold that state law governed the method of setoff but remanded to the district court to

14

choose one of three possible methods apparently as a matter of federal common law. Cf. In re U.S. Oil & Gas Litig., 967 F.2d 489, 494 (11th Cir. 1992) (discussing Jiffy Lube and expressing "no opinion . . . regarding the proper method to be applied in calculating such 'offsets'"); Singer v. Olympia Brewing Co., 878 F.2d 596, 599 (2d Cir. 1989) (concluding that federal common law determines offset issue in Jiffy Lube); Franklin v. Kaypro Corp., 884 F.2d 1222, 1228 (9th Cir. 1989) (same). Second, the problem identified by the Fourth Circuit does not apply to this appeal. Had the Trustee filed a claim under state law that was partially resolved by the New settlement, the right of Northern Trust to a reduction in the amount of its liability, if such a right existed, would arise under state law, but the Trustee has filed only federal claims against Northern Trust and is limited to a single satisfaction by section 550(d). See 5 Collier on Bankruptcy ¶ 544.09 (avoidance actions are federal claims); Freeman v. First Union Nat'l, 329 F.3d 1231, 1233-34 (11th Cir. 2003) (discussing the difference between actions to recover fraudulent transfers brought under state law and those brought under sections 544 and 550 of the Bankruptcy Code).

We emphasize the limit of our conclusion that federal common law is necessary to implement section 550(d). No party appealed the determination of the bankruptcy court that the settlement agreement avoided the 11 transfers and at least

15

partially satisfied the claims against Northern Trust. The bankruptcy court must apply federal common law to determine the amount that the Trustee received on account of the avoided transfers. See In re Int'l Admin., 408 F.3d at 703 ("In fraudulent transfer actions, there is a distinction between avoiding the transaction and actually recovering the property or the value thereof.").

### 2. Federal Law Requires a Judicial Allocation of the Settlement.

Having concluded that state law does not provide the rule of decision, we must determine what the federal rule of single satisfaction requires. Northern Trust argues that the only way to prevent more than a single satisfaction in this circumstance is to allow a setoff against the entire sum of the settlement. We disagree. Although we admit the rule proposed by Northern Trust would prevent even the possibility of double recovery, that rule would also prevent a complete satisfaction in many instances.

We refuse to read section 550(d) as abrogating the right of a trustee to collect the full value of a preferential or fraudulent transfer under 550(a). Section 550(d) limits the trustee to a "single satisfaction": no more and no less. Northern Trust argues that settling parties can avoid a full setoff by expressly dividing the lump-sum among the settled claims, but we agree with the Ninth Circuit that any up-front allocation by the parties would be self-serving when multiple claims, and

16

only some with co-obligors, are settled in a single agreement:

> The settling defendant only cares about the total amount of the settlement, but the plaintiff greatly prefers that the settlement be allocated to non-joint liabilities so as to allow the plaintiff to recover more from other defendants. Because of the lack of truly adverse interests . . . the parties' allocation is virtually meaningless and may not reasonably reflect the parties' relative liabilities. . . . [Leaving to the settling parties to make the allocation] may be inherently prejudicial to the interest of the non-settling parties.

Sims v. DeArmond (In re Lendvest), 42 F.3d 1181, 1184 (9th Cir. 1994); accord

Bowers v. Kuse Enters., Inc., Nos. 97-2583, 97-2507, 1998 WL 957455, at *7 (4th

Cir. Sept. 22, 1998).

Like the Ninth Circuit, we see little reason to ask for, or necessarily credit, a

specific up-front allocation by settling parties that would be based solely on the

trustee's interest in maintaining causes of action against co-obligors. See

McDermott, Inc. v. AmClyde, 511 U.S. 202, 214, 114 S. Ct. 1461, 1468 (1994)

(explaining that allowing the dollar figure of a settlement to determine a co-

defendant's liability, "even when supplemented with good-faith hearings, is likely

to lead to inequitable apportionments of liability"); Slottow v. Am. Cas. Co., 10

F.3d 1355, 1359 (9th Cir. 1993) (refusing to give legal effect to the settling parties'

specific disproportionate allocation). Although it did not specifically allocate the

lump sum paid to the Trustee, the settlement agreement of the New litigation was

structured with the goal of maintaining the Trustee's right to bring a claim for the

17

full value of an avoided transfer against any party that did not settle. The settlement agreement explicitly preserved the Trustee's "rights to pursue claims against any parties other than the [parties to the settlement]" and provided that it did not "in any way prejudice or limit the Trustee's ability to pursue any claims available to her against [other parties]." A transferee should not be bound by the settling parties' self-serving allocation any more than Northern Trust should be bound to receive no credit as a result of an agreement between other parties. Cf. Slottaw, 10 F.3d at 1359 ("[W]e can't blame the [settling parties] for trying to structure the settlement in a manner that best served their interests; but we can't let their allocation bind [the non-settling obligor].").

In settlements involving multiple claims and parties, the estate often settles for less than the total amount of the charged claims, but "a favorable bargain with one defendant gives other defendants no claim to pay less than their proportionate share." McDermott, 511 U.S. at 220, 114 S. Ct. at 1471. Other federal courts that have confronted analogous "settlement[s] where a variety of divergent claims were settled" among multiple parties have refused to bar recovery of the remaining amount owed. Crude Co. v. FERC, 923 F. Supp. 222, 231 (D.D.C. 1996); cf. Gulfstream III Assocs., Inc. v. Gulfstream Aerospace Corp., 995 F.2d 425, 436 (3d Cir. 1993) (allowing "the plaintiff to prove that . . . the settlement or part thereof

18

did not represent damages arising under the same theory of liability as those forming the basis for the [subsequent] award"); I.T.O. Corp. of Balt. v. Sellman, 967 F.2d 971, 973 (4th Cir. 1992) (remanding for allocation of settlement between plaintiffs). To allow a complete setoff in this circumstance would discourage settlements and create a windfall to otherwise liable parties fortunate enough not to be a party to the settlement.

When the amount for which a cause of action has been settled is unclear because the settlement involved multiple injuries, claims, and parties, section 550(d) requires a bankruptcy court to arrive at an equitable valuation of that cause of action as a percentage of the total settlement amount. This process will be similar to determining whether a proposed settlement is in the best interests of the estate, see Fed. R. Bankr. P. 9019, or valuing an unliquidated or contingent claim on the assets of the estate, see 11 U.S.C. § 502(c). Among other relevant evidence of the value of each settled cause of action, the bankruptcy court should consider "(1) the probability of success in litigation; (2) the difficulties to be encountered in collection[; and] (3) the complexity, expense, inconvenience, and delay involved in the litigation." Christo v. Padgett, 223 F.3d 1324, 1335 (11th Cir. 2000). The bankruptcy court need not decide the actual merits of each cause of action, "only the probability of succeeding on those claims." Wallace v. Justice Oaks II, Ltd. (In

19

re Justice Oaks II, Ltd.), 898 F.2d 1544, 1549 (11th Cir. 1990).

This procedure will conserve judicial resources in the long run. Requiring an up-front allocation, either by the parties or by the court, needlessly increases the transaction costs of a settlement. See McDermott, 511 U.S. at 215-17, 114 S. Ct. at 1468-70 (rejecting pretrial hearings to determine if a co-defendant settled in good faith for similar reasons). It makes much more sense to wait and see if future litigation requires the allocation. An allocation by the bankruptcy court will be necessary only when collateral litigation implicates the rule of single satisfaction and, in most cases, only after liability has been ascertained. This process will encourage settlements, prevent a third party from being prejudiced by the self-serving assignment of settling parties, and prevent the estate from obtaining either less than or more than a single satisfaction of a fraudulent conveyance.

Northern Trust asserts, and the bankruptcy court feared, that any post hoc assignment of the various settled claims would be arbitrary, but we disagree. Such an assignment may be inexact, but imprecision is not arbitrariness. The Code sometimes demands that bankruptcy judges decide questions using approximation and conjecture, including the valuation of legal claims, often with little or no guidance. See, e.g., Till v. SCS Credit Corp., 541 U.S. 465, 479, 124 S. Ct. 1951, 1961 (2004) (holding that a "cramdown" interest rate should be based on an

estimate of the risk of the new loan and "the national prime rate . . . which [in turn] reflects the financial market's estimate of the amount a commercial bank should charge"); In re Armstrong World Indus., Inc., 348 B.R. 111, 124 (D. Del. 2006) (affirming the confirmation of a reorganization plan as "fair" predicated on the bankruptcy judge's "reasonable [$3.1 billion] approximation" of the debtor's liability for "present and future asbestos personal injury claims" (emphasis added)). See generally Bernard Trujillo, Patterns in a Complex System: An Empirical Study of Valuation in Business Bankruptcy Cases, 53 UCLA L. Rev. 357, 359 (2005) ("In a wide variety of circumstances, litigants argue for, and bankruptcy courts assign, monetary values for firms and assets."). We commit the decision about section 550(d), like those other decisions, to the sound discretion of the bankruptcy court.

B. *We Decline to Address the Issues Decided by Partial Summary Judgment.*

We need not address the Trustee's remaining arguments that the bankruptcy court erred in its earlier partial summary judgment. The district court did not address the issues raised by the partial summary judgment because it considered those issues moot. When the district court does not address an issue, the proper course of action often is to vacate the order of the district court and remand. Goodman ex rel. Goodman v. Sipos, 259 F.3d 1327, 1330 (11th Cir. 2001);

Beavers v. Am. Cast Iron Pipe Co., 975 F.2d 792, 800 (11th Cir. 1992); Osborne v. Folmar, 735 F.2d 1316, 1318 (11th Cir. 1984). Now that we have reversed the grant of final summary judgment, we leave to the district court the opportunity to address these issues if necessary in the first instance.

## IV. CONCLUSION

The summary judgment in favor of Northern Trust is **REVERSED**. We **VACATE** the judgment of the district court and **REMAND** for proceedings consistent with this opinion.