[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 18-12653
Non-Argument Calendar

_____

D.C. Docket No. 1:17-cr-00144-KD-N-2

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

CALVIN L. HARRIS,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Alabama

_____

(August 15, 2019)

Before MARTIN, JILL PRYOR, and ANDERSON, Circuit Judges.

PER CURIAM:

Calvin L. Harris appeals the district court's denial of his motion for a new trial. He says the jury was exposed to extrinsic evidence that prejudiced the verdict against him. After careful review, we conclude the district court clearly erred in finding that no exposure occurred. We vacate and remand for further proceedings consistent with this opinion.

**I.**

Harris was tried and convicted of conspiracy to carjack, carjacking, use of a firearm during a crime of violence, conspiracy to kidnap, and kidnapping. After the verdict but before sentencing, the government learned from a co-worker of one of the jurors about possible external influence on the jury. In an email to defense counsel reporting what it learned, the government recounted what the co-worker said:

> One of the jurors told her co-worker: that the trial involved a carjacking; three jurors were holdouts while deliberating Wednesday and the jury was sent home Wednesday and would continue deliberations Thursday morning; there were three holdouts during the deliberations on Wednesday; when the jurors returned Thursday morning to continue deliberations, . . . [they] saw the defendant and his friend writing down the tag numbers of the jurors as they entered the court house to resume deliberations; after noticing this, the jurors were quick to vote guilty because of this conduct.

Harris brought the co-worker's statement to the district court's attention. He moved for a new trial under Federal Rule of Criminal Procedure 33. Rule 33

2

allows a defendant to seek a new trial if the jury was exposed to extrinsic evidence that prejudiced the verdict.  See United States v. Siegelman, 640 F.3d 1159, 1181–82 (11th Cir. 2011) (per curiam); see also Fed. R. Crim. P. 33.

The district court interviewed the juror who discussed the external influence with her co-worker by phone.  The parties were not present.  During the interview, the juror, called D.F. to preserve her privacy, said two members of the jury told her that Harris and a friend of Harris's who had testified at the trial were wandering around the parking lot where some jurors parked during deliberations.  Those jurors expressed concern to D.F. and other jurors that Harris and his friend might have a way of finding out their identities based on their license plates.  D.F. said no one claimed to see Harris or his friend write anything down.  The district court provided a transcript of its interview of D.F. to Harris and the government.  It did not contact the jurors who actually witnessed Harris and his friend in the parking lot.

Based on the interview, the district court denied Harris's motion for a new trial.  The district court found as a fact that Harris "never wrote down anybody's . . . tag number," finding instead the jurors only speculated that Harris might see their license plate numbers and figure out who they were.  The district court also found that two jurors seeing Harris and his friend in the parking lot did not

3

constitute extrinsic evidence.  It therefore did not reach the issue of whether

extrinsic evidence prejudiced the verdict.  This is Harris's appeal.

## II.

We review the denial of a motion for a new trial for abuse of discretion.

Siegelman, 640 F.3d at 1181.  We review factual findings supporting the decision

for clear error.  Id. at 1181 n.31.  "For a factual finding to be clearly erroneous, this

court, after reviewing all of the evidence, must be left with a definite and firm

conviction that a mistake has been committed."  United States v. Rodriguez-Lopez,

363 F.3d 1134, 1137 (11th Cir. 2004) (quotation marks omitted).  For the reasons

that follow, this is the rare case where we are left with such a conviction.

To prevail on a Rule 33 motion for a new trial based on outside influence on

the jury, the defendant "has the burden of making a colorable showing that the

exposure has, in fact, occurred."  Siegelman, 640 F.3d at 1182.  The exposure must

involve "a matter pending before the jury."  United States v. Alexander, 782 F.3d

1251, 1258 (11th Cir. 2015) (quotation marks omitted).  If the defendant carries the

burden of showing exposure has occurred, prejudice "is presumed and the burden

shifts to the government to show that the jurors' consideration of extrinsic

evidence was harmless to the defendant."  Siegelman, 640 F.3d at 1182 (quotation

marks omitted).  The verdict may be prejudiced even where only one juror learns

4

of the extrinsic evidence.  See United States v. Tucker, 137 F.3d 1016, 1031–32 (8th Cir. 1998).

We take our cue on what constitutes extrinsic evidence from Federal Rule of Evidence 606(b), which governs juror testimony to impeach a verdict.  See Tanner v. United States, 483 U.S. 107, 116–27, 107 S. Ct. 2739, 2745–51 (1987) (considering whether a district court erred in declining to conduct an evidentiary hearing on a new trial motion based on whether Rule 606(b) would permit the jurors to testify to allegations made in the new trial motion).  Rule 606(b) bars jurors from testifying to matters internal to deliberations, such as their mental processes in reaching a verdict or conversations that occurred during deliberations.  See Peña-Rodriguez v. Colorado, 580 U.S. __, 137 S. Ct. 855, 863–65 (2017).  But it expressly allows testimony about external influences on deliberations or extrinsic evidence that came to the jury's attention during deliberations.  See Fed. R. Evid. 606(b)(2); cf. United States v. Perkins, 748 F.2d 1519, 1534 & n.15 (11th Cir. 1984) (noting Rule 606 allows a juror to testify about prior knowledge of a defendant).  A leading authority put it aptly when it explained Rule 606 permits "juror testimony concerning the jury's extra-record exposure to evidence not subject to adversarial challenge."  27 C. Wright & V. Gold, Federal Practice and Procedure: Evidence § 6075 (2d ed. 2019); see also 3 C. Mueller & L. Kirkpatrick, Federal Evidence § 6:18 (4th ed. 2019) ("The [Rule 606(b)] exception for

5

extraneous prejudicial information . . . allows proof that one or more members of the jury" acquired specific personal knowledge about the parties "from sources outside the courtroom during trial or deliberations.").

The jurors in this case were exposed to extrinsic evidence. Two jurors witnessed Harris and his friend walking through the parking lot where some jurors parked during deliberations. Those jurors speculated in the hearing of some of their fellow jurors about whether Harris and his friend could identify them based on their license plates. This was not part of the evidence at trial; not a matter internal to the deliberations; and not the sort of background information jurors are expected to bring with them into the jury room. See Warger v. Shauers, 721 F.3d 606, 611 (8th Cir. 2013) ("[E]xtraneous information includes objective events such as publicity and extra-record evidence reaching the jury room, and communication or contact between jurors and litigants, the court, or other third parties." (emphasis added and quotation marks omitted)), aff'd 574 U.S. 40, 135 S. Ct. 521 (2014). The district court clearly erred in concluding the jury was not exposed to extrinsic evidence.

Indeed, the district court's own recounting of the evidence is inconsistent with its finding of no exposure. At the hearing on Harris's new trial motion, the district court explained its understanding of the evidence in this way: two jurors "[s]aw [Harris and his friend] walking by and speculated that, oh, I guess he could

6

see our car and get our tag number if he wanted to." The district court then went on to find "there [was] no extraneous information" because Harris "didn't do anything." But walking through the parking lot in proximity to jurors and their cars is a contact with the jurors, even if Harris did nothing wrong and did not intend to provoke the contact. Cf. United States v. Simpson, 950 F.2d 1519, 1521 (10th Cir. 1991) (concluding jurors were exposed to extrinsic information when they incidentally viewed a co-defendant in handcuffs). We think the district court's own understanding of the evidence makes plain that its finding of no exposure was clear error.

In light of this conclusion, we remand for the district court to apply the presumption of prejudice and hold the government to its burden of showing the exposure was harmless. Cf. Siegelman, 640 F.3d at 1182. The district court did not reach this step given its finding of no exposure. We think the district court should decide the issue of prejudice in the first instance. See In re Prudential of Fla. Leasing, Inc., 478 F.3d 1291, 1303 (11th Cir. 2007) ("When the district court does not address an issue, the proper course of action is often to vacate the order of the district court and remand.").

We express no view about whether the exposure in this case warrants a new trial. Neither do we foreclose the government from making any argument it has in support of harmlessness on remand. We also do not reach Harris's argument that

the district court abused its discretion by declining to call the jurors who witnessed Harris and his friend in the parking lot.  The district court will have the opportunity on remand to "conduct a full investigation" into the exposure that occurred if in its discretion it believes further evidence is necessary.  United States v. Brantley, 733 F.2d 1429, 1439 (11th Cir. 1984) (quotation marks and emphasis omitted).

**VACATED AND REMANDED.**