"Plaintiff has attempted to repay the expenses incurred in the ROTC/SOAR program, [and] Plaintiff has no current or anticipated income with which to pay the recoupment of the ROTC/SOAR expenses. Recoupment of the expenses will cause great hardship to the Plaintiff." Complaint, ¶¶ 64–65. Further, the Debtor asks the Court to find that the Plaintiff has "no current or anticipated income or resources with which to pay the ROTC/SOAR expenses." Complaint, ¶ 66. The Debtor will be given twenty-one days to file an amended complaint specifying in further detail the facts she contends that would meet the *Brunner* test as implemented by *Spence*.[9]

A separate Order will issue.

**IN RE: PROVIDENT ROYALTIES, LLC, et al., Debtors.**

**Milo H. Segner, Jr., as Liquidating Trustee of the PR Liquidating Trust, Plaintiff,**

**v.**

**Ruthven Oil & Gas, LLC, Wendell Holland, the Wendell and Kari Holland Trust, and Cianna Resources, Inc., Defendants.**

**Case No. 09–33886 (Jointly Administered)**

**Adversary No. 11–03385–HDH**

United States Bankruptcy Court, N.D. Texas, Dallas Division.

Signed June 3, 2017

Entered 06/05/2017

---

9. The Debtor has only three creditors, two of which hold debt related to educational expenses. The Court is not unmindful that the Debtor has only sought to have one such creditor's debt declared an undue hardship, but not the other.

Jerry C. Alexander, Christopher Alan Robison, Passman and Jones, Sean Joseph McCaffity, Andrew B. Sommerman, Sommerman, McCaffity & Quesada, LLP, Michael R. Rochelle, Rochelle McCullough L.L.P., Dallas, TX, J. Ken Johnson, Martin Walton LLP, Houston, TX, for Plaintiff.

John Hatchett Carney, John H. Carney & Associates, Edwin Sawyer Neely, Sayles Werbner, P.C., Dallas, TX, Jeff P. Prostok, Forshey & Prostok, LLP, Ft. Worth, TX, Matthew W. Brockman, David Allen Elder, William A. Johnson, Hartzog Conger Cason & Neville, Oklahoma City, OK, for Defendants.

## REDACTED VERSION OF AMENDED RULING REGARDING THE APPLICATION OF BANKRUPTCY CODE SECTION 550(d) TO CLAIMS AGAINST CIANNA RESOURCES. INC.[1]

Harlin DeWayne Hale, United States Bankruptcy Judge

This ruling addresses the proper application of the single satisfaction rule found

---

1. The original version of this ruling was sealed because it contained confidential set-

in 11 U.S.C. § 550(d) in a fraudulent transfer action where most of the defendants have settled and the only remaining defendant was a subsequent transferee in connection with some, but not all, of the initial transfers that the trustee avoided in the lawsuit.

The plaintiff in this action (the "Trustee") sued Ruthven Oil & Gas, LLC ("Ruthven"), Wendell Holland ("Holland"), the Wendell and Kari Holland Trust (the "Holland Trust" and together with Ruthven and Holland, the "Ruthven Defendants"), and Cianna Resources, Inc. ("Cianna") to avoid fraudulent transfers. The debtors in the underlying jointly-administered bankruptcy cases (the "Debtors") were in the business of acquiring mineral interests, and in acquiring such interests, the Debtors made use of the brokerage services of the Ruthven Defendants, who in turn made use of the services of certain sub-brokers, including Cianna. There were many transactions in which the Debtors acquired mineral interests, and in connection with those transactions, Ruthven was the initial transferee of $48,812,882.24. Cianna only acted as a sub-broker in transactions involving initial transfers of $28,358,668.09 though, and in connection with those transactions, Cianna was a subsequent transferee of $21,722,518.98.

Several years into the case, the Trustee obtained a partial summary judgment finding that the transfers of $48,812,882.24 from the Debtors to Ruthven were fraudulent transfers avoidable under Bankruptcy Code section 548(a)(1)(A), but also finding that genuine issues of material fact remained as to Ruthven's "value and good

faith" defense under section 548(c). Ultimately, the Trustee settled with the Ruthven Defendants [in exchange for certain assets and consideration, which cannot be enumerated here because of a confidentiality provision in the settlement agreement] (the "Settlement Consideration"). [redacted] Cianna took the position before the District Court that pursuant to section 550(d), at least some portion of the Settlement Consideration must be allocated to reduce the Trustee's claims against Cianna.

On June 28, 2016, the Honorable Jane Boyle, United States District Court Judge for the Northern District of Texas entered an *Order of Reference*[2] referring three matters to this Court for determination so that the parties could be ready for trial. Specifically, this Court was asked to determine (1) whether there is truly an issue of single satisfaction/double recovery under 11 U. S. C. § 550(d), and if so, (2) the value of [the remaining unvalued portion of] the Settlement Consideration, and (3) how much of the total Settlement Consideration should be allocated as recovery from the Ruthven Defendants. To address these issues, the Court first accepted briefing from the parties and held a hearing to address the legal issue of whether section 550(d) is applicable under these circumstances, and if so, what evidence would be required to determine the impact of the Settlement Consideration on the amount potentially recoverable from Cianna. On August 9, 2016, the Court issued an oral ruling finding that section 550(d) is implicated and specifying what evidence the Court would need from the parties to determine the proper application of section

tlement information. This version of the ruling blacks out certain portions of the original ruling and includes brackets to indicate where language from the original version was re-worded or paraphrased.

2. Civil Action No. 3:12–CV–1318–B, Docket No. 166.

550(d).[3] After receiving briefing on the remaining evidentiary issues, holding a hearing on October 24 and 25, 2016, and receiving post-trial briefing from the parties, the Court took this matter under advisement and now issues its ruling making the remaining determinations that have been requested by the District Court.

## I. JURISDICTION

■ This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334(b). The defendants obtained withdrawal of the reference, but the determinations in this ruling were specifically referred to this Court by District Court Judge Boyle. Because the determinations made in this ruling will not result in a judgment or a final order, this Court believes it may enter a ruling as opposed to proposed findings of fact and conclusions of law pursuant to 28 U.S.C. § 157(c)(1). *See, e.g., West v. Peterson (In re Noram Res., Inc.),* No. 11-3598, 2012 WL 2571154, at *1, 2012 Bankr. LEXIS 2991, at *3-4 (Bankr. S.D. Tex. July 2, 2012) ("This Court may not issue a final order or judgment in matters that are within the exclusive authority of Article III courts. The Court may, however, issue interlocutory orders, even in proceedings in which the Court does not have authority to issue a final judgment. A partial summary judgment is an interlocutory motion, and the constitutional limitations on the Court's authority to enter final judgments are not implicated.") (citations omitted); *see also Ball v. Soundview Composite Ltd. (In re Soundview Elite Ltd.),* 543 B.R. 78, 98–99 (Bankr. S.D.N.Y. 2016) (same).[4]

## II. LEGAL RULING

The legal question before the Court is whether there is an issue of single satisfaction under Bankruptcy Code section 550(d) in this adversary proceeding given the Trustee's settlement with the Ruthven Defendants. Stated slightly differently, the Court must determine what impact, if any, the Trustee's receipt of the Settlement Consideration has on the remaining claims against Cianna.

Section 550(a) gives a trustee broad recovery powers once a transfer has been avoided, allowing him to recover the property transferred or the value of such property from either an initial transferee or a subsequent transferee. For example, if a debtor transfers $100 to A, and A transfers $50 of that $100 to B, the trustee would have a claim for $100 against A as an initial transferee and a claim for $50 against B as a subsequent transferee. This obviously presents the danger of a trustee recovering more than a debtor transferred, which brings us to the "single satisfaction rule."

■ Section 550(d) of the Bankruptcy Code states: "The trustee is entitled to only a single satisfaction under subsection (a) of this section." The purpose of this rule is to prevent the trustee from recovering more than he should, but the trustee is still entitled to a full satisfaction. *See Kapila v. Suntrust Mortg. (In re Pearlman),* 515 B.R. 887, 896 (Bankr. M.D. Fla. 2014) ("This 'single satisfaction rule' seeks to limit the trustee to a single recovery for his or her fraudulent transfer claim to ensure the bankruptcy estate is put back in its pre-transfer position but receives no windfall through the avoidance provisions."). This statutory language sounds

---

3. For the benefit of the parties and the District Court, the Court's oral ruling that was delivered on the record on August 9, 2016 is fully discussed in this ruling.

4. In the event that the District Court disagrees and believes the Bankruptcy Court lacks authority to enter this ruling, this Court asks that this ruling be construed as proposed findings of fact and conclusions of law.

relatively straightforward, but the case currently before the Court presents two distinct challenges to application of the single satisfaction rule.

The first challenge presented by this case is that the initial transferee settled but the subsequent transferee did not. If the opposite were true, the amount recoverable from the initial transferee would have simply been reduced by the full amount of the settlement proceeds recovered from the subsequent transferee so as to prevent the trustee from recovering more than the total amount of the avoided transfer. *See, e.g., Lindquist v. JNG Corp. (In re Lindell)*, 334 B.R. 249, 256–57 (Bankr. D. Minn. 2005). Instead, the Court is faced with the more complicated issue of how to determine the impact of the settlement consideration received from the initial transferee on the lesser claim against the subsequent transferee.

■ This case presents a further complication because the Trustee had claims against the Ruthven Defendants for a large number of transfers, but only some of those transfers involved subsequent transfers to Cianna. As a result, some of the claims against the Ruthven Defendants were relevant to Cianna but some were not, and the Ruthven Defendants settled all of them at once in exchange for the Settlement Consideration. The Settlement Consideration received by the Trustee on account of claims that were unrelated to Cianna (and the amounts still left unsatisfied on those claims) should not have any effect on Cianna's remaining potential liability.

## A. The Parties' Suggestions for Application of the Single Satisfaction Rule

The Court must identify an application of the single satisfaction rule that success-fully navigates the specific challenges of this case while staying true to Bankruptcy Code section 550(d) and the recovery mechanism more broadly described in section 550(a). It is helpful to examine the various approaches suggested by the parties to see whether each comports with the language and purpose of the statute.

## 1. Full Settlement Credit Pursuant to Texas Law

Cianna first asserts that Texas law on settlement allocation should apply, which Cianna claims would give it a "100% settlement allocation credit" pursuant to section 33.012(b) of the Texas Civil Practice and Remedies Code (the "TCPRC"). For the reasons expressed below, the Court does not believe this is an accurate interpretation of the single satisfaction rule.

■ First, federal law, not Texas law, applies. *See In re Prudential of Florida Leasing, Inc.*, 478 F.3d 1291, 1298–1301 (11th Cir. 2007) (holding that federal law, not state law, governs application of the single satisfaction rule under section 550(d) ).[5] The Court in *Prudential* recalled that federal courts should incorporate state law as the federal rule of decision unless application of the particular state law in question would frustrate specific objectives of the federal programs. *Id.* at 1298 (citing *Kamen v. Kemper Fin. Sen's., Inc.*, 500 U.S. 90, 98, 111 S.Ct. 1711, 114 L.Ed.2d 152 (1991) ). The Court went on to find that (1) application of federal common law to the single satisfaction rule satisfies a need for uniformity, (2) applying state law in this context has the potential to frustrate the purposes of the Bankruptcy Code, and (3) applying a uniform rule of federal law in this context will not disturb

---

**5.** *Prudential* is a case both sides cite and rely upon.

any pre-existing commercial expectations predicated on state law. *Id.* at 1299. This Court agrees with that reasoning in *Prudential.*[6] The only remaining claims against the Ruthven Defendants were for fraudulent transfers under Bankruptcy Code section 548,[7] and the recovery of transfers avoided under Bankruptcy Code section 548 is governed by Bankruptcy Code section 550.

Second, even if the Court were to look to Texas law, it does not appear that Cianna would receive a full settlement allocation credit. At least one court has examined whether the Texas proportionate responsibility statute (Chapter 33 of the TCPRC) applies to fraudulent transfer actions under state law and concluded in a well-reasoned opinion that it does not. *See Challenger Gaming Solutions, Inc. v. Earp*, 402 S.W.3d 290, 299 (Tex App.–Dallas 2013, no pet.) ("Considering the plain meaning of the text and purpose of the [Uniform Fraudulent Transfer Act], we conclude the proportionate responsibility statute conflicts with the liability scheme in the UFTA and cannot be reconciled. Accordingly, we conclude the proportionate responsibility statute does not apply to an UFTA claim."); *but see Tow v. Speer*, No. 11-3700, 2015 WL 1058080, at \*, 2015 U.S. Dist. LEXIS 29267, at \*40-41 (S.D. Tex. Mar. 10, 2015) (applying, without discussion, section 33.012(b) of the TCPRC to a fraudulent transfer claim under the Texas Uniform Fraudulent Trans-

fers Act). In the *Challenger Gaming* opinion, the Court specifically noted:

> [A]n UFTA claim does not lend itself to a fault-allocation scheme. Rather, the focus of an UFTA claim is to ensure the satisfaction of a creditor's claim when the elements of a fraudulent transfer are proven. Specifically, the UFTA provides several different forms of equitable relief designed to follow and reach assets.

*Id.* at 298.

To further illustrate why this is an unworkable interpretation, in our hypothetical in which a debtor transfers $100 to A and A transfers $50 of that $100 to B, say A settles for $50. If we give B a "settlement credit" for the full amount of the settlement, this results in no liability for B, and the trustee has been prevented from following the property and from recovering half of the avoided transfer. That result appears contrary to the goal of section 550 to make the trustee whole, and the Court can find no support for this result in the Bankruptcy Code.

Finally, on September 23, 2014, Cianna stipulated and agreed that "Chapter 33 of the Texas Civil Practice and Remedies Code does not apply to fraudulent transfer claims under the Bankruptcy Code or the Uniform Fraudulent Transfer Act." *Agreed Order Denying Leave for Responsible Third Parties Designations* [Docket No. 216].

---

**6.** The Court does not believe this conflicts with the statement in *Fezler v. Davis (In re Davis)*, 194 F.3d 570, 574 (5th Cir. 1999) that "bankruptcy and state law are accommodated by a judicially created concept of deference to state policies that do not conflict with federal law." In this case, an application of state law to section 550 of the Bankruptcy Code as Cianna suggests would clearly frustrate the purpose of section 550. In addition, the facts of *Fezler* are significantly different than the

facts before this Court, and the concerns in *Fezler* regarding allowing bankruptcy courts to act as a haven for wrongdoers or to abrogate state and local laws reasonably designed to protect public health and safety, are not present in this case.

**7.** *See Joint Pretrial Order* at ¶ 81 [Docket No. 307].

## 2. Proportional Allocation

Cianna next suggests that it should receive a dollar-for-dollar credit against its potential liability for the portion of the Settlement Consideration allocated to the claims settled by Ruthven that Cianna characterizes as "joint liability" claims. Specifically, Cianna characterizes approximately $22 million of the total $48 million of claims against Ruthven as "joint liability" claims because those represent the amount that Ruthven received from the Debtors and then transferred to Cianna. This would result in a reduction of the Trustee's claims against Cianna of at least 45.16% of the value of the Settlement Consideration. Reducing a subsequent transferee's liability based on a proportional allocation, however, is inconsistent with the recovery scheme in section 550 of the Bankruptcy Code.

■ The parties disagree over whether (1) the claims against Cianna are claims for which Cianna and Ruthven were jointly liable or (2) the Trustee has independent claims against Cianna and Ruthven. The import of this dispute is that Cianna asserts that if Ruthven settled claims that Cianna was jointly liable for, the Settlement Consideration must be allocated, at least in part, to those joint claims, and as a result, the claims against Cianna must necessarily be reduced by the full amount of the allocation. The Court believes this misconstrues the purpose and function of section 550. The aim of section 550(a) is to allow the trustee to follow the property that has been transferred away from the debtor. The statute does not speak in terms of assigning damages to different parties or apportioning fault or responsibility for damages. Rather, the statute refers to the trustee's ability to recover the transferred property, or the value of such property, from the parties that received it.

In our hypothetical in which the debtor transferred $100 to A and A subsequently transferred $50 to B, say A settles for $50, the value of the property that A is still holding. Under Cianna's proportional allocation of the settlement value, B would receive a "settlement credit" for $25, leaving the trustee with a recovery of $50 and a surviving claim against B for only $25. The trustee would not be able to obtain a full recovery of the property from the parties who have it. If a partial recovery from the initial transferee always impaired the ability of the trustee to pursue the remainder of its claim against the subsequent transferee, the purpose of section 550 would be thwarted. The Court in *Prudential* specifically cautioned against adoption of an application of the single satisfaction rule that would prevent complete satisfaction in many instances. *Prudential*, 478 F.3d at 1301 ("We refuse to read section 550(d) as abrogating the right of a trustee to collect the full value of a preferential or fraudulent transfer under 550(a). Section 550(d) limits the trustee to a 'single satisfaction': no more and no less.").

Cianna acknowledges that applying this proportional allocation of settlement consideration will consistently result in an impairment of a trustee's ability to recover the full amount of any avoided transfers. Cianna states in its brief: "As cases dealing with § 550(a) settlements show, a settlement is a game-changer with respect to a trustee's ability to recover 100% of a fraudulent transfer—once the trustee compromises his claims in settlement, he bargains away his right to a full recovery." *Response to Trustee's Brief on Section 550(d)* at p. 12 [Docket No. 333]. Interestingly, this impairment of the trustee's ability to recover the full amount of avoided transfers from the parties actually holding the property only occurs if the trustee settles with the initial transferee first. In our hypothetical, the trustee could first

recover $50 from the subsequent transferee, which would eliminate only the "joint liability" claims and lower the initial transferee's liability to $50. The trustee could then recover $50 from the initial transferee, resulting in a $100 recovery. The trustee has obtained the same $50 recovery from the initial transferee, but the proportional allocation rule proposed by Cianna would result in the order of the recoveries controlling whether the trustee is able to obtain a total recovery of $75 or $100.

In any event, the Court does not read the authority Cianna cited to support a proportional allocation of settlement proceeds for amounts for which there is "joint liability." [8] Section 550 allows a trustee to obtain a complete satisfaction by pursuing the transferred property or its value from initial and subsequent transferees. Section 550(d) limits the trustee's ability to recover under section 550(a), but not in the way Cianna suggests. Rather, the trustee is prevented from obtaining more than a single satisfaction. A more faithful application of the single satisfaction rule would be to limit the amount of a subsequent transferee's liability to the lesser of (A) the amount of the avoided transfer, reduced by any settlement value received or (B) the

amount received by the subsequent transferee. This application of the single satisfaction rule would effectively set a ceiling on the trustee's potential recovery but would not impair the trustee's ability to obtain a complete recovery.

### 3. Reduction of Maximum Recovery in Overall Lawsuit

The Trustee suggests that the Trustee's maximum potential recovery in the entire lawsuit should be reduced by the amount of the Settlement Consideration, and Cianna's liability should only be reduced to the extent that the Trustee's maximum potential recovery in the lawsuit is less than the amount Cianna received as a subsequent transferee. This approach satisfies the purpose of the single satisfaction rule by putting a ceiling on the Trustee's recovery, but the ceiling is too high. By examining the Trustee's maximum potential recovery in the entire lawsuit, the Trustee conflates the claims in the lawsuit and ignores the fact that Cianna was not a subsequent transferee for some of the initial transfers that are being settled. The Trustee's inability to recover on unrelated initial transfers should not impact Cianna's potential

---

8. Cianna cited *CNB Int'l, Inc. v. Kelleher (In re CNB Int'l Inc.)*, 393 B.R. 306 (Bankr. W.D. N.Y. 2008) in support of its allocation theory, but the facts of that case made it such that a full allocation of settlement consideration, a proportional allocation of settlement consideration, or a reduction in the maximum amount of damages recoverable against all parties in the case all would have had the same effect on the subsequent transferee's liability. This is because in *CNB* the initial transferee and the subsequent transferee had the same amount of potential liability, so when several settlements received by the trustee reduced the maximum amount recoverable in the case, they also reduced the amount recoverable from the subsequent transferee on a dollar-for-dollar basis. The trustee was not being denied a complete recovery. *See id.* at 333–34 ("By reason of the fraudulent char-

acter of the formation transaction, [the debtor] suffered damages in the amount of $11,264,000. Against this amount, the court will apply offsets for settlements in the amount of $625,000. Accordingly, [the subsequent transferee] remains liable to the plaintiffs for $10,639,000."). On appeal, however, the District Court found that the party the Bankruptcy Court identified as a subsequent transferee ("Lloyds") was actually an initial transferee and not entitled to any credit for settlement funds received from other parties because "the amounts recovered by the Trust in settlement from other parties are independent of the amount of Lloyds' liability, in that none of those parties were immediate or mediate transferees of Lloyds as the initial transferee." *CNB Int'l. Inc. Litig. Trust v. Lloyds TSB Bank (In re CNB Int'l Inc.)*, 440 B.R. 31, 45–46 (W.D. N.Y. 2010).

liability. The effect of this rule would be that Cianna's liability would not be reduced until the Trustee receives a full recovery on claims arising from transactions in which Cianna was not involved in any way.

To expand our hypothetical, say the debtor engages in two transactions with A. In the first transaction, the debtor transfers $100 to A and A transfers $50 to B. In the second transaction, the debtor transfers $100 to A and A transfers $50 to C. When the trustee sues A, B, and C, he elects to do so in a single lawsuit. Under the Trustee's suggested application of section 550(d), if A settles all claims against it for $150, both B and C could still be liable for $50 each. Then if the trustee recovers $50 from either B or C, presumably the liability for the other party would go away. But this cannot be. A subsequent transferee's liability should not be affected by the trustee's recovery from a subsequent transferee on an unrelated transaction.

■ To disentangle these transactions, the Court concludes section 550(d) must be applied on a transfer-by-transfer basis, which requires an allocation of settlement consideration across the claims being settled. *See Prudential,* 478 F.3d at 1302 ("When the amount for which a cause of action has been settled is unclear because the settlement involved multiple injuries, claims, and parties, section 550(d) requires a bankruptcy court to arrive at an equitable valuation of that cause of action as a percentage of the total settlement amount."). So in our hypothetical, if the Court first determined that $150 of settlement proceeds should be allocated equally across the claims against A, the maximum recovery for each transfer would be reduced by $75 to $25, and this would, in turn, reduce the amount that the trustee could recover from B to $25 and from C to $25. On the other hand, if the Court deter-

mined that the settlement proceeds should be allocated $50 to the initial transfer giving rise to the subsequent transfer to B and $100 to the initial transfer giving rise to the subsequent transfer to C, the maximum recovery against B would remain at $50 and the maximum recovery against C would be reduced to $0. Just because the Trustee has the right to bring multiple claims in a single lawsuit does not mean that they should be allowed to interfere with each other or to affect the application of the single satisfaction rule.

## B. The Appropriate Application of the Single Satisfaction Rule in this Case

■■ The purpose of section 550 is to restore the estate to the financial condition it would have been in if the avoided transfers had not occurred, and the specific purpose of section 550(d) is to act as a restrictor plate on the roaring engine of recovery provided to the trustee in section 550(a). The single satisfaction rule cannot be circumvented by conflating multiple unrelated claims and lawsuits, but at the same time, the single satisfaction rule does not exist to create a windfall for defendants once a settlement has been reached. The Court must identify an application of section 550(d) that prevents the possibility of a double recovery, but the Court must also be careful not to adopt a rule that would, in many cases, prevent a single complete satisfaction.

■ The Court, therefore, concludes that section 550(d) must be applied on a transfer-by-transfer basis, and for each transfer, the Court must do the following:

- First, look at the amount of the initial transfer that gave rise to the subsequent transfer, which sets the maximum recovery.

- Next, deduct from the maximum recovery the value received by the

Trustee in any settlement with the initial transferee.

- And after these first two steps are complete, the Trustee may recover from the subsequent transferee the lesser of (1) the amount the subsequent transferee received or (2) the Trustee's maximum recovery as reduced by any settlement.

In order to do this calculation, the Court must know (1) the total amount received by the initial transferee for each transfer; (2) the total amount received by the subsequent transferee on account of each initial transfer; and (3) the settlement value received by the Trustee on account of each initial transfer. The portion of the $48 million in initial transfers that resulted in subsequent transfers to Cianna, along with the value of the Settlement Consideration, will drive the allocation that the Court can then use to set the ceiling for recovery from Cianna. The remaining items for determination are (1) valuation of the Settlement Consideration, (2) a listing of the amounts of the specific initial transfers that gave rise to the subsequent transfers to Cianna (the "Relevant Initial Transfers"), and (3) an allocation of the Settlement Consideration across the Relevant Initial Transfers.

## IV. EVIDENTIARY RULINGS

Before the Court can make the required factual determinations, it must first address the parties' evidentiary objections. Specifically, the Trustee filed the *Liquidating Trustee's Motion to Exclude Expert Testimony of John P. Dick* [Docket No. 367] (the "Trustee Motion to Exclude") and Cianna filed the *Defendant Cianna Resources, Inc's Motion to Exclude the Proposed Expert Testimony of Stephen E. Nichols* [Docket No. 379] (the "Cianna Motion to Exclude").

Federal Rule of Evidence 702 serves as the standard for determining the admissibility of expert testimony. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 588, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). Under Rule 702, a witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

FED. R. EVID. 702. Pursuant to Federal Rule of Evidence 104(a), the Court must act as a gatekeeper and determine any preliminary question about whether an expert witness is qualified and whether expert testimony is admissible. *Moore v. Ashland Chem., Inc.*, 151 F.3d 269, 276 (5th Cir. 1998). In this gatekeeping role, the Court will conduct preliminary fact-finding and assess whether the reasoning or methodology underlying the testimony rests on a reliable foundation and "whether that reasoning or methodology properly can be applied to the facts in issue." *Id.*; *Daubert*, 509 U.S. at 592–93, 113 S.Ct. 2786. Ultimately, the requirements set forth by the Federal Rules of Evidence and the progeny of *Daubert* apply to both scientific and non-scientific expert testimony. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147–48, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999).

"The proponent of expert testimony bears the burden of establishing its admissibility." *Kador v. City of New*

*Roads,* No. 3:07-682, 2011 WL 4889102, at *1, 2011 U.S. Dist. LEXIS 118110, at *2 (M.D. La. Oct. 13, 2011). "The burden of laying the proper foundation for the admission of the expert testimony is on the party offering the expert, and admissibility must be shown by a preponderance of the evidence." *Id.* Thus, a party seeking to have a court admit expert testimony must first demonstrate that the witness is indeed an expert, then that his testimony is reliable and based on accepted methods, and finally that his principles and methods apply to the facts. To prove that an expert's methodology is reliable "requires some objective, independent validation of the expert's methodology;" the "expert's assurances that he has utilized generally accepted scientific methodology is insufficient." *See Moore,* 151 F.3d at 276.

 Admissible expert opinion may be based on data or facts the expert "has been made aware of or personally observed." FED. R. EVID. 703. The basis of the testimony may include facts or data that would not be admissible in evidence, so long as such data or facts are of a type reasonably relied upon by experts in the field in forming an opinion on the subject. *Id.* "[A]n expert is permitted wide latitude to offer opinions, including those that are not based on firsthand knowledge or observation." *Daubert,* 509 U.S. at 592, 113 S.Ct. 2786. A difference in qualification or expertise of experts, tends to go to the weight of their respective testimony, rather than the admissibility of their testimony altogether. *Huss v. Gayden,* 571 F.3d 442, 452 (5th Cir. 2009). However, courts are not required to admit opinion testimony that is connected to data by mere *ipse dixit* of the expert. *Gen. Elec. Co. v. Joiner,* 522 U.S. 136, 146, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997).

 Expert testimony is not admissible if it is irrelevant FED. R. EVID. 402.

Under Federal Rule of Evidence 401, "evidence is relevant if it has any tendency to make a fact more or less probable than it would be without the evidence; and the fact is of consequence in determining the action." Relevance of testimony often turns upon whether the testimony can help the judge understand the evidence or to determine a fact in issue. *Daubert,* 509 U.S. at 591, 113 S.Ct. 2786. "Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." *Id.* at 591, 113 S.Ct. 2786.

 In summary, the Court, in its role as gatekeeper, will first determine whether the witness can be qualified as an expert by assessing whether he possesses relevant knowledge, skill, experience, training, or education. Second, the Court will assess whether his methodology is reliable and can be applied to the facts in issue. Third, the Court will consider the expert's testimony to determine whether it is based on his expertise. And finally, the Court will consider whether such testimony is relevant and admissible.

 John Paul Dick is qualified as an expert based on his knowledge, skill, experience, training, and education. The methodology Mr. Dick utilized is reliable and was appropriately applied to the facts in issue. The testimony offered by Mr. Dick was within his expertise, relevant, and admissible. The issues the Trustee raises with regard to Mr. Dick's testimony will go to the weight that the Court gives to his conclusions. The Trustee Motion to Exclude, however, is denied.

Stephen Nichols is qualified as an expert based on his knowledge, skill, experience, training, and education. The methodology Mr. Nichols utilized is reliable and was appropriately applied to the facts in issue. The testimony offered by Mr. Nichols was within his expertise, relevant, and admissi-

ble. The issues Cianna raises with regard to Mr. Nichols' testimony will go to the weight that the Court gives to his conclusions. The Cianna Motion to Exclude, however, is denied.

## V. REMAINING FACTUAL DETERMINATIONS

In order to evaluate the impact of the Trustee's settlement with the Ruthven Defendants on the Trustee's claims against Cianna, the Court must determine (1) the value of the Settlement Consideration, (2) the amounts of the Relevant Initial Transfers, which gave rise to the subsequent transfers to Cianna, and (3) an allocation of the Settlement Consideration across the Relevant Initial Transfers.

### A. The Value of the Ruthven Settlement

 The Settlement Consideration consisted of [certain assets for which Cianna and the Trustee have stipulated as to value, and others which Cianna and the Trustee cannot agree on the value (the "Disputed Assets"). The Disputed Assets] are the only component of the Settlement Consideration that still needs to be valued by the Court.

The parties presented evidence from three fact witnesses and two expert witnesses regarding the value of the [Disputed Assets], but before addressing that evidence, the Court must address a few other issues that were raised in connection with the valuation of the Settlement Consideration. Specifically, the parties disagreed as to the appropriate date for the valuation of the [Disputed Assets] and also as to whether the [Disputed Assets] should be discounted to account for the expenses the Trustee has had to, and will have to, incur in connection with the acquisition and divestiture of the [Disputed Assets].

With regard to timing, the Trustee and the Ruthven Defendants closed their settlement agreement on November 10, 2015, but the settlement agreement was retroactively effective as of September 9, 2015. The Trustee makes the point that he could not have sold the property received as part of the Settlement Consideration before the actual closing in November, but based on the effective date of the Settlement Agreement, the Trustee [derived benefits associated with the Disputed Assets] beginning in September when the [Disputed Assets] were legally transferred to the Trustee. Fluctuations in value after that date are not relevant in determining how much value was given as part of the settlement, and the Court will value the [Disputed Assets] as of the effective date of the settlement agreement.

With regard to the expenses associated with acquiring and liquidating the [Disputed Assets], the Trustee argues that the value of the Settlement Consideration must be considered in light of the costs of converting it to cash. The Trustee presented evidence that [the Disputed Assets required considerable time and expense to acquire and liquidate]. The Court agrees that non-cash consideration is generally worth less to a liquidating trust than cash of the same nominal value. The problem that the Court runs into, however, is that the Trustee did not provide much evidence regarding how much of a discount the Court should apply to the [Disputed Assets'] market value. There was testimony regarding [the Trustee's] time and effort, but there was no specific information regarding the amount of expenses incurred by the Trustee. Based on the Court's own experience with dispositions of assets of this kind in bankruptcy, the Court believes a roughly five percent discount from the market value of the [Disputed Assets] is appropriate to reflect the transaction costs

of acquiring these assets and converting them to cash.

With the preliminary questions of the date of valuation and the relevance of liquidation expenses resolved, the Court will now address the value of the [Disputed Assets], The witnesses that presented evidence regarding the value of the [Disputed Assets] were (1) the Trustee, [redacted] (2) [redacted] the former owner of the [Disputed Assets], (3) [an individual familiar with selling assets similar to the Disputed Assets at auction], (4) [redacted], the valuation expert for the Trustee, and (5) [redacted], the valuation expert for Cianna. The values assigned to the [Disputed Assets] range from approximately [redacted] to approximately [redacted]. In an affidavit dated April 29, 2016 and submitted to the District Court on June 2, 2016, the Trustee stated that the total value of the Settlement Consideration does not exceed [redacted], implying a maximum value of the [Disputed Assets] of [redacted].[9] [The former owner of the Disputed Assets] also submitted an affidavit dated April 28, 2016 to the District Court on June 2, 2016 in which he stated that he believed the total value of the Settlement Consideration does not exceed [redacted], implying a maximum value of the [Disputed Assets] of [redacted].[10] The Court has very little explanation of how the Trustee and [the former owner of the Disputed Assets] arrived at these values and is also sensitive to the fact that these opinions of value were given by the settling parties with full knowledge of the continuing litigation in this matter. As a result, the Court lends little weight to these estimates of value.

[One witness testified that the value of the Disputed Assets could be increased if they were not sold as a single group, but in smaller lots.][11] This estimate of value from [that witness], however, is of limited use to the Court in answering the question of how much the [Disputed Assets] were worth, not because of any fault of [the witness], but because of the type of estimate it was. [The witness] did not offer this estimate as a final opinion on the value of the [Disputed Assets]—he offered the estimate in hopes of being hired to run an auction for the Trustee. It was a "quick look" based on the price that the [Disputed Assets] might receive at auction based on limited information and only two or three hours of work. [The witness] also did not value [the entirety of the Disputed Assets that were valued by the experts hired by Cianna and the Trustee]. Based on [the witness's] testimony before the Court, it is clear that [the witness's] estimate of value would have been higher if [the witness] had been provided with more information and spent more time analyzing it.

Tire remaining valuation testimony came from the experts [hired by Cianna and the Trustee]. As of September 2015, [the Trustee's expert] valued the [Disputed Assets] at [redacted] and [Cianna's expert] valued the [Disputed Assets] at [redacted]. The experts took different approaches to valuing the large number of [assets] included in the [Disputed Assets], and each offered a reasonable explanation for why they believed their approach was appropriate. Neither was perfect. During the hearing, it became apparent that the [data] that [Cianna's expert] used in his valuation may have been too optimistic when compared to the actual results obtained between the time of his valuation and the time of the hearings. [The Trustee's expert], however, admitted that for some [of the Disputed Assets], their true value lies

---

9. Trustee's Exhibit 26.

10. Trustee's Exhibit 25.

11. Cianna's Exhibit 4.

[in aspects of the assets that he did not consider and to which he did not assign appropriate value]. In addition, the Court does not believe [the Trustee's expert] properly considered the appropriate discount rate to use, which can have a significant impact on the final valuation. While both of the experts testified credibly, the Court found the testimony of [Cianna's expert] to be more persuasive than the testimony of [the Trustee's expert]. In addition, the testimony of [the witness familiar with selling assets similar to the Disputed Assets at auction] tends to support the overall testimony of [Cianna's expert] more than it supports the testimony of [the Trustee's expert].

The Court finds that as of September 9, 2015, adjusted for the expenses of liquidation, the [Disputed Assets] had a fair market value of [redacted]. Including the remaining components of the Settlement Consideration, the Settlement Consideration is valued at [redacted].

## B. The Relevant Initial Transfers

This Court has already found that there were $48,812,882.24 in fraudulent transfers to Ruthven. The parties have acknowledged that in all transactions relevant to Cianna, the Debtors transferred money to Ruthven, Ruthven transferred money to Cianna, and Cianna transferred money to landowners. *Amended Joint Pretrial Order* at ¶ 37 [Case No. 3; 12–CV–1318–B, Docket No. 140]. The only initial transfers that are relevant to application of the single satisfaction rule in this case (*i.e.*, the Relevant Initial Transfers) are those initial transfers made in transactions involving Cianna for which the Trustee is attempting to recover from Cianna as a subsequent transferee under section 550(a)(2).

There is a small disagreement regarding the total amount of the Relevant Initial Transfers. Cianna asserted the total amount of Relevant Initial Transfers was $28,596,328.09, but the Trustee calculates this amount to be $28,358,668.09. Both parties were relying on the Trustee's records to determine this amount, but the Court will adopt the Trustee's slightly lower amount, which is favorable to Cianna.

There is also a discrepancy regarding the amount of transfers to Cianna resulting from the Relevant Initial Transfers. Cianna uses $22,044,107.05,[12] but for reasons explained by the Trustee on page 9 of the *Plaintiff's Trial Brief Regarding 11 U.S.C. § 550(d)* [Docket No. 371], the Trustee is using the slightly lower number of $21,722,518.98. The Court will again use the lower number, which was suggested by the Trustee and is more favorable for Cianna.

The amount of each of the Relevant Initial Transfers was identified by the Trustee and is included in Exhibit A attached to this ruling.

## C. An Allocation of the Settlement Consideration Across the Relevant Initial Transfers

■ Allocation of settlement proceeds to settled claims is inherently difficult. For one thing, settlements happen at various stages of litigation, and the claims will not have been fully litigated, leaving the Court with an incomplete record with which to evaluate the relative strengths of the claims. In addition, we are not just to trust the representations of the parties to the settlement, which are understandably self-

---

**12.** Cianna also suggested that the Court should use this amount reduced by the amount of payments that Cianna paid to landowners based on Cianna's "mere conduit" affirmative defense. Since the time this matter was briefed, however, the Court has granted summary judgment to the Trustee on Cianna's "mere conduit" affirmative defense.

serving. *Sims v. DeArmond (In re Lendvest Mortg., Inc.),* 42 F.3d 1181, 1184 (9th Cir. 1994) (stating that allowing the settling parties to make the allocation would be inherently prejudicial to the interest of the non-settling parties); *see also In re Prudential of Florida Leasing, Inc.,* 478 F.3d 1291, 1301 (11th Cir. 2007) (agreeing with the Ninth Circuit Court of Appeals that any up-front allocation by the parties would be self-serving when multiple claims are being settled in a single agreement). Rather, in allocating settlement value across claims, courts should consider "evidence of the value of each settled cause of action," as well as other factors such as "(1) the probability of success in litigation; (2) the difficulties to be encountered in collection; and (3) the complexity, expense, inconvenience, and delay involved in the litigation." *Prudential,* 478 F.3d at 1302.

The Trustee argues that there was a high probability of success on all of the settled claims and none warrant a heavier weighting of the Settlement Consideration. Cianna argues that the transactions involving the [redacted], which were the transactions Cianna was involved with, were more problematic and deserve a greater allocation of the Settlement Consideration.

The Trustee testified that he did not think any claims were more or less valuable than others, but [the former owner] stated in a deposition that he thought the [redacted] (the claims for transactions involving Cianna) were tougher to defend, Cianna also points to the complaint in which the Trustee alleged that the [redacted] properties [involving Cianna] were worthless. *Plaintiff's Third Amended Complaint Against Ruthven Oil & Gas, LLC, Wendell Holland, the Wendell and Kari Holland Trust, and Cianna Resources, Inc.* at ¶¶ 36–37 [Docket No. 94].

In this case, there was very little left to be litigated. The only remaining claims against the Ruthven Defendants were for fraudulent transfers. *See Joint Pretrial Order* at ¶ 81 [Docket No. 307]. The transfers to Ruthven have already been found to be avoidable pursuant to section 548(a)(1)(A) subject only to a potential affirmative defense in 548(c) if Ruthven could prove both that (1) it took for value and (2) it took in good faith. *See Findings of Fact and Conclusions of Law* [Docket No. 174]; *Memorandum Opinion and Order* [Case No. 3:12–CV–1318–B, Docket No. 100]. It appears that the Ruthven Defendants would have had significant difficulty showing good faith, and that difficulty would have been common to all claims.

Ultimately, the Court finds that no special allocation of the Settlement Consideration is warranted in this case. The probability of success in litigation was not significantly different for the transfers based on the [redacted] than the transfers based on the [redacted]. The difficulties to be encountered in collection and the complexity, expense, inconvenience, and delay involved in the litigation would have been roughly the same for all of the claims against the Ruthven Defendants. As a result, the Court sees no reason to weigh the allocation more heavily toward the Relevant Initial Transfers, and instead the Settlement Consideration should be allocated proportionally across all of the claims that the Ruthven Defendants settled.

## VI. APPLICATION OF FACTUAL DETERMINATIONS TO LEGAL STRUCTURE

The Ruthven Defendants settled claims related to $48,812,882.24 worth of initial transfers for Settlement Consideration worth [redacted]. With regard to Cianna, the Relevant Initial Transfers totaled $28,358,668.09, of which Cianna received $21,722,518.98 as a subsequent transferee.

202

An exhibit showing the application of the single satisfaction rule to the claims against Cianna is attached to this ruling as Exhibit A. Column 1 lists the property that was purchased in each of these transactions. Column 2 lists the Relevant Initial Transfers, which gave rise to the subsequent transfers to Cianna and set the maximum recovery on account of each transfer. Column 3 lists the amount of the Settlement Consideration allocated to each of the Relevant Initial Transfers. Column 4 shows the maximum recovery for each of the Relevant Initial Transfers as reduced by the Settlement Consideration received (Column 2 minus Column 3). Column 5 lists the amount that was subsequently transferred to Cianna for each of the Relevant Initial Transfers. Column 6 answers the ultimate question, which is what the remaining liability for Cianna is for each of the Relevant Initial Transfers. Column 6 is populated by taking the lesser of (A) Column 4, the Relevant Initial Transfer less the Settlement Consideration and (B) Column 5, the amount subsequently transferred to Cianna based on that particular initial transfer. The sum of Column 6 is $21,117,572,79, which represents the maximum potential recovery from Cianna pursuant to section 550(a)(2) after accounting for the Trustee's settlement with the Ruthven Defendants.

Attachment

**Exhibit A**

| Section 550(d) Analysis Based on Settlement Consideration of $[REDACTED] | | | | | |
|---|---|---|---|---|---|
| COLUMN 1 | COLUMN 2 | COLUMN 3 | COLUMN 4 | COLUMN 5 | COLUMN 6 |
| PROPERTY REFERENCE NUMBER | AMOUNT OF INITIAL TRANSFER TO RUTHVEN THAT GAVE RISE TO SUBSEQUENT TRANSFER TO CIANNA (MAX. RECOVERY FROM ALL PARTIES) | VALUE RECEIVED BY TRUSTEE IN SETTLEMENT WITH INITIAL TRANSFEREE* | TRUSTEE'S MAXIMUM RECOVERY REDUCED BY SETTLEMENT (COLUMN 2 MINUS COLUMN 3) | AMOUNT CIANNA ACTUALLY RECEIVED ON ACCOUNT OF THE INITIAL TRANSFER | LESSER OF (COLUMN 4) MAX RECOVERY, REDUCED BY SETTLEMENT; AND (COLUMN 5) AMOUNT CIANNA ACTUALLY RECEIVED ON ACCOUNT OF THE INITIAL TRANSFERS |
| G 0001 | $216,000.00 | | | $150,709.89 | |
| G 0002 | $60,480.00 | | | $50,638.52 | |
| G 0003 | $114,288.00 | | | $100,648.20 | |
| G 0004 | $90,840.00 | | | $76,058.25 | |
| G 0005 | $180,000.00 | | | $150,709.88 | |
| G 0006 | $144,000.00 | | | $100,473.26 | |
| G 0018 | $50,000.00 | | | $35,000.00 | |
| G 0027 | $72,000.00 | | | $56,606.19 | |
| G 0028 | $144,000.00 | | | $84,735.17 | |
| G 0029 | $381,600.00 | | | $224,549.87 | |
| G 0030 | $119,052.00 | | | $70,055.01 | |
| G 0031 | $36,000.00 | | | $21,183.86 | |
| G 0032 | $36,000.00 | | | $21,183.86 | |
| G 0033 | $72,000.00 | | | $42,367.73 | |
| G 0034 | $36,000.00 | | | $21,183.86 | |
| G 0035 | $126,000.00 | | | $74,143.49 | |
| G 0036 | $75,802.50 | | | $44,605.26 | |
| G 0037 | $126,282.60 | | | $81,204.42 | |
| G 0038 | $144,000.00 | | | $104,000.13 | |
| G 0039 | $288,000.00 | | | $209,000.26 | |
| G 0040 | $432,000.00 | | | $312,000.39 | |
| G 0041 | $29,628.00 | | | $17,434.31 | |
| G 0042 | $36,000.00 | | | $24,105.95 | |
| G 0043 | $126,000.00 | | | $91,000.00 | |
| G 0044 | $126,000.00 | | | $91,000.00 | |
| G 0045 | $126,000.00 | | | $91,000.00 | |
| G 0046 | $126,000.00 | | | $91,000.00 | |
| G 0047 | $126,000.00 | | | $91,000.00 | |
| G 0048 | $126,000.00 | | | $91,000.00 | |
| G 0049 | $8,000.00 | | | $5,777.77 | |
| G 0050 | $8,000.00 | | | $5,777.77 | |
| G 0051 | $144,000.00 | | | $113,212.37 | |
| G 0052 | $252,000.00 | | | $187,000.00 | |
| G 0053 | $324,000.00 | | | $254,000.00 | |
| G 0054 | $612,000.00 | | | $442,000.00 | |
| G 0055 | $252,000.00 | | | $182,000.00 | |
| G 0056 | $54,000.00 | | | $42,454.64 | |
| G 0057 | $54,000.00 | | | $42,454.64 | |
| G 0058 | $180,000.00 | | | $142,515.47 | |
| G 0059 | $54,000.00 | | | $42,454.64 | |
| G 0060 | $14,400.00 | | | $11,321.24 | |
| G 0061 | $180,000.00 | | | $142,515.47 | |
| G 0062 | $168,000.00 | | | $113,212.37 | |
| G 0063 | $210,850.50 | | | $142,088.60 | |
| G 0064 | $168,000.00 | | | $113,212.37 | |
| G 0065 | $126,000.00 | | | $91,000.00 | |
| G 0066 | $114,918.00 | | | $104,661.00 | |
| G 0067 | $36,000.00 | | | $26,000.00 | |
| G 0068 | $288,000.00 | | | $208,000.00 | |
| G 0069 | $95,832.00 | | | $69,212.00 | |
| G 0070 | $70,961.40 | | | $51,268.24 | |
| G 0071 | $108,441.00 | | | $78,316.50 | |
| G 0072 | $113,533.33 | | | $81,656.71 | |
| G 0073 | $318,000.00 | | | $202,700.00 | |
| G 0074 | $132,552.00 | | | $95,732.00 | |
| G 0075 | $100,800.00 | | | $61,923.00 | |
| G 0076 | $45,000.00 | | | $36,000.00 | |
| G 0077 | $195,000.00 | | | $156,000.00 | |
| G 0078 | $202,500.00 | | | $179,612.30 | |

| COLUMN 1 | COLUMN 2 | COLUMN 3 | COLUMN 4 | COLUMN 5 | COLUMN 6 |
|---|---|---|---|---|---|
| PROPERTY REFERENCE NUMBER | AMOUNT OF INITIAL TRANSFER TO RUTHVEN THAT GAVE RISE TO SUBSEQUENT TRANSFER TO CIANNA (MAX. RECOVERY FROM ALL PARTIES) | VALUE RECEIVED BY TRUSTEE IN SETTLEMENT WITH INITIAL TRANSFEREE* | TRUSTEE'S MAXIMUM RECOVERY, REDUCED BY SETTLEMENT (COLUMN 2 MINUS COLUMN 3) | AMOUNT CIANNA ACTUALLY RECEIVED ON ACCOUNT OF THE INITIAL TRANSFER | LESSER OF (COLUMN 4) MAX RECOVERY, REDUCED BY SETTLEMENT, AND (COLUMN 5) AMOUNT CIANNA ACTUALLY RECEIVED ON ACCOUNT OF THE INITIAL TRANSFERS |
| G 0079 | $67,500.00 | | | $59,870.76 | |
| G 0080 | $180,000.00 | | | $159,655.37 | |
| G 0081 | $79,860.00 | | | $70,833.77 | |
| G 0082 | $79,999.95 | | | $70,957.90 | |
| G 0083 | $79,999.95 | | | $70,957.90 | |
| G 0084 | $30,000.00 | | | $24,000.00 | |
| G 0085 | $112,500.00 | | | $90,397.32 | |
| G 0086 | $112,500.00 | | | $90,397.32 | |
| G 0087 | $36,000.00 | | | $74,105.95 | |
| G 0088 | $15,000.00 | | | $12,057.98 | |
| G 0089 | $112,590.00 | | | $90,469.64 | |
| G 0090 | $120,000.00 | | | $96,423.81 | |
| G 0091 | $360,000.00 | | | $289,271.42 | |
| G 0092 | $120,000.00 | | | $96,423.81 | |
| G 0093 | $120,000.00 | | | $96,423.81 | |
| G 0094 | $316,220.00 | | | $248,527.27 | |
| G 0095 | $100,000.00 | | | $100,000.00 | |
| G 0096 | $256,000.00 | | | $108,623.60 | |
| G 0097 | $384,000.00 | | | $287,935.39 | |
| G 0101 | $278,950.05 | | | $223,160.04 | |
| G 0102 | $180,000.00 | | | $144,000.00 | |
| G 0103 | $92,100.00 | | | $73,680.00 | |
| G 0204 | $240,000.00 | | | $192,000.00 | |
| G 0205 | $259,999.95 | | | $207,999.96 | |
| G 0206 | $240,000.00 | | | $192,000.00 | |
| G 0107 | $237,000.00 | | | $189,600.00 | |
| G 0108 | $112,500.00 | | | $90,000.00 | |
| G 0109 | $240,000.00 | | | $192,000.00 | |
| G 0110 | $93,120.00 | | | $74,496.00 | |
| G 0111 | $60,000.00 | | | $48,039.00 | |
| G 0112 | $179,955.00 | | | $143,964.00 | |
| G 0113 | $30,000.00 | | | $74,000.00 | |
| G 0114 | $180,000.00 | | | $144,000.00 | |
| G 0115 | $198,769.95 | | | $159,015.96 | |
| G 0116 | $240,000.00 | | | $192,000.00 | |
| G 0117 | $260,000.00 | | | $207,999.96 | |
| G 0118 | $120,000.00 | | | $96,000.00 | |
| G 0119 | $237,660.00 | | | $190,128.00 | |
| G 0120 | $18,750.00 | | | $15,000.00 | |
| G 0121 | $106,447.50 | | | $85,158.00 | |
| G 0122 | $692,475.00 | | | $553,980.00 | |
| G 0123 | $77,900.10 | | | $62,320.08 | |
| G 0124 | $78,770.00 | | | $63,015.96 | |
| G 0125 | $90,000.00 | | | $72,000.00 | |
| G 0126 | $30,000.00 | | | $24,000.00 | |
| G 0127 | $105,000.00 | | | $84,000.00 | |
| G 0128 | $180,000.00 | | | $164,000.00 | |
| G 0129 | $480,000.00 | | | $384,000.00 | |
| G 0130 | $60,000.00 | | | $48,000.00 | |
| G 0131 | $90,000.00 | | | $72,000.00 | |
| G 0132 | $480,000.00 | | | $384,000.00 | |
| G 0133 | $180,000.00 | | | $144,000.00 | |
| G 0134 | $120,000.00 | | | $96,000.00 | |
| G 0135 | $495,000.00 | | | $396,000.00 | |
| G 0136 | $120,000.00 | | | $96,000.00 | |
| G 0137 | $60,000.00 | | | $48,000.00 | |
| G 0138 | $60,000.00 | | | $48,000.00 | |
| G 0139 | $108,555.00 | | | $86,844.00 | |
| G 0140 | $120,000.00 | | | $96,000.00 | |
| G 0141 | $173,325.00 | | | $138,660.00 | |

| COLUMN 1 | COLUMN 2 | COLUMN 3 | COLUMN 4 | COLUMN 5 | COLUMN 6 |
|---|---|---|---|---|---|
| PROPERTY REFERENCE NUMBER | AMOUNT OF INITIAL TRANSFER TO RUTHVEN THAT GAVE RISE TO SUBSEQUENT TRANSFER TO CIANNA (MAX. RECOVERY FROM ALL PARTIES) | VALUE RECEIVED BY TRUSTEE IN SETTLEMENT WITH INITIAL TRANSFEREE* | TRUSTEE'S MAXIMUM RECOVERY, REDUCED BY SETTLEMENT (COLUMN 2 MINUS COLUMN 3) | AMOUNT CIANNA ACTUALLY RECEIVED ON ACCOUNT OF THE INITIAL TRANSFER | LESSER OF (COLUMN 4) MAX RECOVERY, REDUCED BY SETTLEMENT; AND (COLUMN 5) AMOUNT CIANNA ACTUALLY RECEIVED ON ACCOUNT OF THE INITIAL TRANSFERS |
| G 0142 | $120,000.00 | | | $96,000.00 | |
| G 0143 | $120,000.00 | | | $96,000.00 | |
| G 0144 | $180,000.00 | | | $144,000.00 | |
| G 0145 | $120,000.00 | | | $96,000.00 | |
| G 0146 | $117,731.25 | | | $94,185.00 | |
| G 0147 | $342,000.00 | | | $273,600.00 | |
| G 0148 | $60,000.00 | | | $48,000.00 | |
| G 0149 | $22,305.90 | | | $17,844.72 | |
| G 0150 | $113,865.00 | | | $95,412.00 | |
| G 0151 | $60,000.00 | | | $48,000.00 | |
| G 0152 | $120,000.00 | | | $96,000.00 | |
| G 0153 | $120,000.00 | | | $96,000.00 | |
| G 0154 | $116,250.00 | | | $93,000.00 | |
| G 0155 | $90,000.00 | | | $72,000.00 | |
| G 0156 | $39,634.95 | | | $31,707.96 | |
| G 0157 | $39,750.00 | | | $31,800.00 | |
| G 0158 | $20,000.00 | | | $15,999.96 | |
| G 0159 | $120,000.00 | | | $96,000.00 | |
| G 0160 | $480,000.00 | | | $384,000.00 | |
| G 0161 | $39,635.00 | | | $30,139.26 | |
| G 0162 | $39,635.00 | | | $30,139.26 | |
| G 0163 | $39,750.00 | | | $30,226.74 | |
| G 0164 | $20,000.00 | | | $15,208.33 | |
| G 0165 | $26,666.70 | | | $20,277.92 | |
| G 0166 | $26,666.70 | | | $20,277.92 | |
| G 0167 | $60,000.00 | | | $45,625.37 | |
| G 0168 | $60,000.00 | | | $45,625.02 | |
| G 0169 | $88,000.00 | | | $66,536.82 | |
| G 0170 | $88,000.00 | | | $66,536.82 | |
| G 0171 | $120,000.00 | | | $91,250.64 | |
| G 0172 | $62,696.25 | | | $47,675.56 | |
| G 0173 | $120,000.00 | | | $91,250.64 | |
| G 0174 | $19,875.00 | | | $15,114.37 | |
| G 0175 | $10,000.00 | | | $7,604.14 | |
| G 0176 | $120,000.00 | | | $91,258.54 | |
| G 0177 | $26,666.70 | | | $20,444.47 | |
| G 0178 | $26,666.70 | | | $20,444.47 | |
| G 0179 | $26,666.70 | | | $20,444.47 | |
| G 0180 | $26,666.70 | | | $20,444.47 | |
| G 0181 | $62,696.25 | | | $48,067.13 | |
| G 0182 | $60,000.00 | | | $46,000.00 | |
| G 0183 | $240,000.00 | | | $184,000.00 | |
| G 0184 | $480,000.00 | | | $368,000.00 | |
| G 0185 | $60,000.00 | | | $46,000.00 | |
| G 0186 | $240,150.00 | | | $184,115.00 | |
| G 0187 | $480,000.00 | | | $368,000.00 | |
| G 0188 | $120,000.00 | | | $92,000.00 | |
| G 0189 | $240,000.00 | | | $184,000.00 | |
| G 0190 | $250,455.00 | | | $192,015.50 | |
| G 0191 | $118,853.00 | | | $91,120.25 | |
| G 0192 | $58,860.00 | | | $45,126.00 | |
| G 0193 | $180,000.00 | | | $138,000.00 | |
| G 0194 | $240,000.00 | | | $184,000.00 | |
| G 0195 | $239,453.00 | | | $183,580.60 | |
| G 0196 | $360,000.00 | | | $276,000.00 | |
| G 0197 | $30,000.00 | | | $23,000.00 | |
| G 0198 | $30,000.00 | | | $23,000.00 | |
| G 0199 | $60,000.00 | | | $46,000.00 | |
| G 0200 | $60,000.00 | | | $46,000.00 | |
| G 0201 | $90,443.00 | | | $69,339.25 | |

| COLUMN 1 | COLUMN 2 | COLUMN 3 | COLUMN 4 | COLUMN 5 | COLUMN 6 |
|---|---|---|---|---|---|
| PROPERTY REFERENCE NUMBER | AMOUNT OF INITIAL TRANSFER TO RUTHVEN THAT GAVE RISE TO SUBSEQUENT TRANSFER TO CIANNA (MAX. RECOVERY FROM ALL PARTIES) | VALUE RECEIVED BY TRUSTEE IN SETTLEMENT WITH INITIAL TRANSFEREE* | TRUSTEE'S MAXIMUM RECOVERY, REDUCED BY SETTLEMENT (COLUMN 2 MINUS COLUMN 3) | AMOUNT CIANNA ACTUALLY RECEIVED ON ACCOUNT OF THE INITIAL TRANSFER | LESSER OF (COLUMN 4) MAX RECOVERY, REDUCED BY SETTLEMENT, AND (COLUMN 5) AMOUNT CIANNA ACTUALLY RECEIVED ON ACCOUNT OF THE INITIAL TRANSFERS |
| G.0202 | $120,000.00 | | | $92,000.00 | |
| G.0203 | $112,763.00 | | | $86,451.25 | |
| G.0204 | $240,000.00 | | | $184,000.00 | |
| G.0205 | $180,000.00 | | | $138,000.00 | |
| G.0206 | $60,000.00 | | | $46,000.00 | |
| G.0207 | $120,000.00 | | | $92,000.00 | |
| G.0208 | $60,000.00 | | | $46,000.00 | |
| G.0209 | $122,400.00 | | | $93,840.00 | |
| G.0210 | $180,000.00 | | | $138,000.00 | |
| G.0211 | $120,000.00 | | | $92,000.00 | |
| G.0212 | $60,000.00 | | | $46,000.00 | |
| G.0213 | $120,000.00 | | | $92,000.00 | |
| G.0214 | $30,000.00 | | | $23,000.00 | |
| G.0215 | $260,050.00 | | | $227,000.00 | |
| G.0216 | $180,000.00 | | | $368,000.00 | |
| G.0217 | $54,457.50 | | | $41,750.75 | |
| G.0218 | $120,000.00 | | | $92,000.00 | |
| G.0239 | $120,000.00 | | | $92,000.00 | |
| TOTALS | $28,358,668.09 | | | $21,722,518.98 | |

*The value received by the Trustee in settlement with the Ruthven Defendants was calculated by dividing the Settlement Consideration by the total amount of all initial transfers ($[REDACTED] / $68,812,882.74) and then multiplying that ratio by the amount of the relevant Initial Transfer.

# IN RE: MEMORIAL PRODUCTION PARTNERS LP, Debtor(s)

## Beta Operating Company, LLC, Plaintiff(s)

### v.

## Aera Energy LLC, et al, Defendant(s)

### CASE NO: 17–30262
### ADVERSARY NO. 17–3365

United States Bankruptcy Court, S.D. Texas, Houston Division.

Signed 01/19/2018